No. 19,971.

FRANCES KECK, *Appellee,* v. J. J. JONES and C. M. HAVER-
STOCK, *Appellants.*

SYLLABUS BY THE COURT.

1. AUTOMOBILE—*Injuries—No Joint Liability of Dealer Who Sold the Car and Purchaser Who Was the Driver.*   An automobile dealer ordered a Ford taxicab for a customer.   The car arrived at the dealer's garage, was supplied with gasoline, oil, water and air, was inspected, and was tested by running it, all before noon of a certain day.   In the afternoon the purchaser came for the car, paid for it, declined assistance in operating it because he had had experience, and drove it away.   After driving the car for probably an hour the purchaser returned to the garage and asked for some one to accompany him to observe the mechanical operation of the car and make any adjustments that might be necessary.   The dealer considered it a part of his business to see that the car was in proper working order and sent an employee, who was a machinist, with the purchaser to observe the mechanical workings of the car

Keck v. Jones.

and correct the same if found defective, and for no other purpose. The purchaser started for a school to get his daughter. On the way he collided with a pedestrian, who was injured. The machinist did not interfere with the operation of the car. *Held*, the owner and driver of the car was not the agent or servant of the dealer, the dealer had no authority to control the driver in the operation of the car, and consequently the dealer was not responsible for the owner's negligent handling of the car.

2. SAME—*Negligence Found—Not Charged in Petition—No Recovery.* In an action for damages by the injured pedestrian the petition charged that the driver of the car was negligent in enumerated particulars. The jury were asked to state in what his negligence consisted if they found he was negligent. The answer was that he was negligent in a particular not complained of in the petition. *Held*, the driver was entitled to judgment on the special finding.

Appeal from Sedgwick district court, division No. 2; THORN-TON W. SARGENT, judge. Opinion filed March 11, 1916. Reversed.

*J. N. Haymaker, A. V. Roberts, W. D. Jochems, J. D. Houston,* and *C. H. Brooks,* all of Wichita, for the appellants.

*R. L. Holmes, Charles G. Yankey,* and *W. E. Holmes,* all of Wichita, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for personal injuries sustained by being struck by an automobile. The defendants were the owner of the automobile, who was the driver, and the dealer from whom the automobile was purchased. The plaintiff recovered against both defendants, who appeal.

The petition charged that it was a part of the business of the dealer, Jones, to teach customers needing instruction how to operate automobiles which they purchased from him; that Haverstock purchased a Ford taxicab; that Jones sent an employee, Smith, as a demonstrator and teacher to give Haverstock a lesson in driving; and that the accident occurred while Haverstock, as the agent of Jones, was operating the car in furtherance of the business of Jones. The negligence charged was that Jones permitted inexperienced Haverstock to operate the car on the crowded streets of the city of Wichita; that the

car was driven at a rate of speed forbidden by city ordinance; that while driving north a turn was made to the east on the wrong side of an intersecting street, contrary to city ordinance; and that, although Haverstock saw the plaintiff in time to avoid a collision, he failed to give any signal of an intention to make the turn described, so that the plaintiff was not aware that the course of the automobile was to be changed. The proof was that the car, which had been ordered for Haverstock, arrived at Jones's garage, was supplied with gasoline, oil, water and air, was inspected, and was tested by running it, all before noon of a certain day. In the afternoon Haverstock came for the car, paid for it, declined assistance in operating it because he had had experience, and drove it away. After driving the car about town for probably an hour he returned to the garage and asked for some one to go with him to listen to the working of the car, see if it was running properly, and if it were not to make the necessary adjustment. The employee, Smith, who was a machinist and not a demonstrator or teacher, got into the car for this purpose only, and Haverstock started for a certain school to get his daughter. On the way the accident happened.

The jury returned the following special findings of fact:

"1st: Who was driving the car at the time of the accident in question? Answer: C. M. Haverstock.

"2nd: If you find that the defendant Haverstock was driving the car at the time in question, state where he was going and for what purpose. Answer: He was going to test the operation of the car and to the Washington schoolhouse to get Haverstock's daughter.

"3rd: Had not the defendant Haverstock paid and settled for said car prior to the accident in question? Answer: Yes.

"4th: State who, if any one, was riding with the defendant Haverstock at the time of the accident in question. Answer: Curtis Smith.

"5th: If you find that one Curtis Smith was riding in said car at the time of said accident, is it not true that Smith's only duty was to observe the mechanical workings of said car and correct the same if found defective? Answer: Yes.

"6th: Was it any part of the duty of said Smith to teach defendant Haverstock how to drive the car? Answer: No.

"7th: Is it not a fact: (a) That defendant Haverstock desired some one to accompany him to observe the mechanical operation of the car? Answer: (a) Yes.

(b) To make any adjustments that might be necessary? Answer: (b) Yes.

"(c) That Smith was riding in the car at the time in question for that purpose only? Answer: (c) Yes.

"8th: How much experience, if any, had the defendant Haverstock had in driving automobiles prior to the accident in question? Answer: Not very much.

"9th: Had the defendant Haverstock driven a Ford automobile prior to the day on which the accident occurred? Answer: Yes; once.

"10th: Had the defendant Haverstock driven any other cars than the Ford car prior to the day of the accident? Answer: Yes.

"11th: If you find the defendant Jones guilty of negligence, state in what the negligence consisted. Answer: In allowing Haverstock with insufficient experience in running a Ford car to run the car on a close-in crowded street.

"12th: If you find the defendant Haverstock guilty of negligence, state in what the negligence consisted. Answer: In not stopping the car as quickly as he could have.

"13th: State who was in control of the car in question at the time of the accident. Answer: C. M. Haverstock and Curtis Smith."

There was no evidence that the situation presented by the petition, a dealer performing his customary function of teaching an inexperienced customer how to drive, existed. On the other hand, the proof was clear and undisputed that the automobile was not being driven for the purpose of giving Haverstock instruction, that Smith was not a demonstrator or teacher, that he was not in the automobile to teach Haverstock how to drive, that Smith had no right to control the operation of the car and did not attempt to do so, and that whenever a purchaser claims he knows how to operate a car, takes charge of it, and drives off, no instructor is sent with him. The result is the 11th finding has no basis upon which to rest. The duty which it assumes was not discharged, to see that the automobile was carefully operated while a customer received instruction in driving, did not exist, and, indeed, the nonexistence of this duty was established by the first seven special findings. Likewise the portion of the 13th finding which states that Smith was in control of the car is without any support in the evidence.

As indicated, the petition alleged that Haverstock was the agent of Jones at the time of the accident and that the operation of the automobile at that time was in furtherance of Jones's business. No facts as to the nature of the agency and no facts as to the extent and purpose of Jones's business were stated other than it was a part of his business to instruct inex-

perienced purchasers of automobiles, and that Haverstock was receiving instruction when the plaintiff was injured. The plaintiff's evidence was confined to proof of the case thus made. On cross-examination of one of the defendants' witnesses, called to prove that Smith did not go with Haverstock to teach him to drive, it came out that the practice is to inspect cars to see that they run properly. The proof which destroyed the plaintiff's case against Jones, that Smith was not an instructor and Haverstock was not his pupil, included proof that Smith went with Haverstock to adjust the carburetor and spark plugs if "they were not hitting right." An effort is made to erect a foundation for the judgment against Jones out of this material—a new cause of action not stated in the petition, not in the mind of the plaintiff up to the time when she rested her case, and suggested for the first time on cross-examination of a witness for the defendants.

It is a cardinal rule of interpretation that general averments in a pleading will be referred to specific matters particularly pleaded and not to some distinct and independent matter of which no hint is given. In the present instance the petition was drawn on the single, definite theory that it was a part of Jones's business to teach the inexperienced Haverstock how to drive his new car, and that in driving the car Haverstock acted as the agent of Jones in furtherance of that business. No issue was tendered, either expressly or by inference or implication, that it was a part of Jones's business to put cars in proper running order, that this car required testing and possible adjustment, that Smith was sent out with the car for that purpose, and that Haverstock was the agent of Jones to operate the car in furtherance of that business. There was no cause of action of that kind to submit to the jury.

The court gave some instructions relating to the subject of common enterprise which authorized the jury to consider the case in the aspect just discussed, and the question of Jones's liability on that theory may be determined.

The car had been sold, delivered, and taken from Jones's possession and control by the purchaser. Haverstock was driving the car to test its operation and to bring his daughter from school. He asked for one of Jones's men to go with him to observe the mechanical working of the car and to make ad-

justments if any were necessary. Jones had tested the car by operating it before delivery to Haverstock, but it was a part of his business to see that the car was in working order and he complied with Haverstock's request by sending Smith. Smith's duty began and ended with observation of the mechanical working of the car and mechanical adjustment of the parts if necessary. Neither Smith nor his master, Jones, had any authority to start or stop the car, to direct when or where or how it should go, or to control a single one of its movements while in operation. The evidence and the findings of the jury were that Haverstock, not Jones, desired some one to accompany Haverstock, that Haverstock desired some one to accompany him, not to drive but to observe mechanical operations, and if necessary to make adjustments, and that Smith was riding in the car for that purpose only. Haverstock, the owner and driver, surrendered none of his dominion over the car and its management, and Smith did not in fact interfere with Haverstock's management of it. Although the enterprise was in a sense joint for certain purposes, management of the car was not one of them; and in the absence of right on the part of Jones to control the movements of the car, or actual interference with Haverstock's control, Haverstock's negligence in operating the car could not be charged to Jones.

In the case of *Corley v. Railway Co.*, 90 Kan. 70, 133 Pac. 555, it was said:

"Where two persons are engaged in a common enterprise, using a conveyance for their purpose, each is said to be responsible for the acts of the other, but for this situation to arise each must have an equal right of control." (p. 74.)

The Corley case, however, was one in which the injury was inflicted by the railway company on one of the occupants of the automobile while his companion was driving.

In the case of *Anthony v. Kiefner*, 96 Kan. 194, 150 Pac. 524, the driver of an automobile injured a third person, and an effort was made to charge his mother, who was riding with him, with liability. It was held the facts did not show the occupants of the automobile were engaged in a common enterprise, although the jury had so determined. In discussing the subject of the liability of one person for the negligent conduct of another when both are engaged in a mutual under-

taking the court expressly recognized the principle that right of control over the means and agencies effecting the injury, either control in fact at the time or control as master or principal, is essential to such liability.

The case of *Judge v. Wallen,* (Neb. 1915) 152 N. W. 318, L. R. A., 1915 E., 436, resembles the one under discussion. The syllabus, a portion of which is italicized to call attention to the principle involved, reads as follows:

"While two traveling salesmen are engaged in the joint enterprise of transporting themselves by automobile over the territory canvassed by both for different merchants, one of the salesmen owning and operating the automobile and the other paying sums about equal to the cost of gasoline and oil consumed, the latter, *if possessing joint control over the automobile,* may be liable for the negligence of the other in operating it; both being occupants at the time."

Leaving decided automobile cases at one side, the question presented is easily solved by the application of elementary principles of law to the established facts. If Jones be liable it must be on the principle of *respondeat superior* for the performance of the negligent act charged. The criterion of this liability is power of control. Unless the person sought to be charged with liability had authority to direct and control the action of the alleged servant or agent, the relation of master and servant or principal and agent did not exist and there was no superior to answer for the negligent act. Since Jones could not command Haverstock, either as servant or agent, with respect to what streets Haverstock used, or the rate of speed at which he drove, or when he turned, or how he turned, or on what side of the street he drove, or what signals he gave, Jones was not responsible for the way in which the car was operated.

In the case of *Judge v. Wallen,* referred to above, it was left to the jury to say whether or not the occupant of the automobile who was not driving had joint authority with the driver to control the car. The court said it was proper to do this because of certain facts recited in the opinion and because of "certain obvious rights" growing out of the mutual undertaking. Whenever the facts are disputed or give rise to conflicting inferences the question should be submitted to the jury, under appropriate instructions. In this case there is no

Keck v. Jones.

conflict in the evidence relating to the controlling facts, the most material of which were correctly found by the jury in the first seven findings of fact. The evidence not only afforded no ground for the inference that Smith was in control of the car but showed affirmatively that he was not in control.

The 12th finding of fact was outside the issues and acquitted Haverstock of the negligence charged in the petition. (*Creamery Co. v. Daniels,* 72 Kan. 418, 419, 83 Pac. 986; *Corley v. Railway Co.,* 90 Kan. 70, 71, 133 Pac. 555; *Martin v. City of Columbus,* 96 Kan. 803, 153 Pac. 518, and cases cited in the opinion.) The charges of negligence contained in the petition have been stated. It is contended that the last one may be interpreted as asserting that Haverstock was negligent in not stopping the car sooner than he did. · Haverstock was proceeding toward the north and turned toward the east at a street intersection. The allegation was that he knew the intersection of streets was much used by pedestrians, that he saw or should have seen the plaintiff approaching the crossing, and saw or should have seen the plaintiff as she was proceeding southward immediately before the collision and in ample time to avoid it—

"*But that* the said Smith and the said Haverstock omitted carelessly and negligently to give any signal or sign of intention to turn to the east so that the said plaintiff was not aware and had no notice of the intention of the said occupants of said machine to turn or change the course of the machine."

This allegation is susceptible of but one meaning. It does not pretend to charge that Haverstock ought to have stopped but could not or did not do so quickly enough. The sole fault attributed to him is that he did not signal the plaintiff so that she could have notice of his intention to change the course of the automobile.

The judgment of the district court is reversed and the cause is remanded with direction to set aside findings numbered 11 and 13 and render judgment for the defendant.